IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

```
ANTHONY SEREDUCK,                       )   Cause No. CV 05-69-GF-CSO
                                        )
          Plaintiff,                    )
                                        )   ORDER and
     vs.                                )   FINDINGS AND RECOMMENDATION
                                        )   OF U.S. MAGISTRATE JUDGE
McDONALD, Warden; VARNUM, Chief of      )
Security; VOLRATH, Contract             )
Monitor; JERRY JOHNSON, Contract        )
Coordinator; FORSMAN and LAMEY,         )
Unit Managers; CAPTAIN CAMPROS;         )
LIEUTENANT CHRISTAENS; SERGEANT         )
JOHNSON; Grievance Coordinator          )
STUART; Correctional Officers           )
CASSEM, EVERETT, KIMMET, WIRSCHING,     )
MUSIC, and SWANSON,                     )
                                        )
          Defendants.                   )
_____ )
```

On July 21, 2005, Plaintiff Anthony Sereduck moved to proceed in forma pauperis with this action under 42 U.S.C. § 1983. That motion was granted in a separate Order. Sereduck is a state prisoner proceeding pro se.

On January 17, 2006, Sereduck filed an Amended Complaint, along with a motion to amend. On January 19, 2006, the Court ordered Sereduck to respond to certain questions that were designed

to assist the prescreening process.[1]  Sereduck responded on January 26, 2006.

## I. Motion to Amend

Sereduck filed his Complaint on July 21, 2005.  He submitted "amended information" on August 2, 2005, consisting of an address change.  See Pl.'s Mot. to Refile Amended Compl. (Court's doc. 11) at 1.  On January 17, 2006, he filed both an Amended Complaint and a motion to amend.  Id.

Fed. R. Civ. P. 15(a) authorizes a plaintiff to amend his pleading once, as a matter of course, before a responsive pleading is served.  The "amended information" was not truly an amendment to the Complaint, so the Amended Complaint could be filed without the need for a motion.  Accordingly, the motion to amend is moot, as the Amended Complaint was filed by the Clerk when it was received.

## II. Sereduck's Allegations

Sereduck's Amended Complaint contains five counts.  To understand his pleading, it is important to acknowledge that he is in prison as a result of two convictions for sexual assault. and that he has a medical disorder that causes him to wet the bed at night.  See Am. Compl. (Court's doc. 12) at 3, ¶ 7.  Sereduck's

---

[1] This Order was based on the Court's reading of the original Complaint (Court's doc. 1) and the Amended Information to Complaint (Court's doc. 5).  Sereduck's Amended Complaint was not docketed until the day after the Court issued its Order.  The Amended Complaint is not substantially different from the original Complaint.

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

response to the Court's Order of January 19, 2006, contains allegations supporting Defendants Varnum's and Forsman's knowledge of his safety concerns and explains what happened in the two assaults that he alleges were committed against him.  See Pl.'s Resp. to Questions (Court's doc. 13) at 1-2.

First, Sereduck alleges that Defendants MacDonald, Varnum, Forsman, and Lamey were deliberately indifferent to his safety because they housed Sereduck in a pod where they knew he was receiving threats and refused to transfer him to another facility. Sereduck asserts that MacDonald is also responsible.  He contends that Defendants Music and Swanson ignored another inmate's threat against Sereduck.  Id. at 4-7, ¶ V.A.

Second, Sereduck avers that Sergeant Johnson threatened to put him in administrative segregation when he refused to take the top bunk in his cell, despite a medical restriction requiring him to be on the bottom bunk.  He also claims that Defendants Varnum, Forsman, and Lamey were deliberately indifferent to his safety when they downplayed his medical and safety concerns and continued his housing designation in S-pod.  Id. at 7-9, ¶ V.B.

Third, Sereduck alleges that Defendant Kimmet "defamed" him, that Defendant Wirsching threatened to write up Sereduck if he complained about Kimmet's comment, and that Wirsching did write him up.  He states that Defendant Christiaens found him guilty of the disciplinary charge without an adequate investigation.  He also

alleges that Defendant Campros refused to acknowledge an incident in which ice water was poured on Sereduck's pillow. He claims that Sergeant Johnson placed the pod in lockdown when Sereduck reported that someone had poured water on his sheets and that Johnson then ignored threats made against Sereduck by other inmates as a result of the lockdown. He also contends that Defendant Everett threatened him with bodily harm and other inmates cheered. Am. Compl. at 9-11, ¶ V.C.

Fourth, Sereduck contends that Defendants Cassem, Varnum, Campros, Volrath, Sergeant Johnson, and Jerry Johnson deprived him of equal protection in connection with an incident in which the lock on Sereduck's property box was smashed and items were stolen from him. He also claims that these Defendants exhibited deliberate indifference to his safety. Id. at 11-14, ¶ V.D.

Finally, Sereduck alleges that Defendants Campros, MacDonald, Stuart, Christiaens, and Forsman denied him due process in connection with four disciplinary hearings by failing to investigate adequately. Id. at 15-17, ¶ V.E. Sereduck's response to the Order of January 19, 2006, explains that among the sanctions he received were thirty days' "detention," presumably in segregation, reclassification resulting in placement back in S-pod, a $1.00 fine, and eight hours' extra duty. See Pl.'s Resp. at 2-3.

For his relief, Sereduck requests expungement of his disciplinary violations and restoration of his original

classification status, placement on the low-security side of Montana State Prison, and an order prohibiting his transfer out of Montana State Prison. He also seeks compensatory and punitive damages. Id. at 17-18, ¶ VI.

### III. Analysis

In some respects, the Amended Complaint states a claim sufficient to warrant service and a response from some Defendants. In other respects, it does not.

#### A. Defendants Varnum, Forsman, Lamey, Music, and Swanson

As to Defendants Varnum, Forsman, Lamey, Music, and Swanson, it is appropriate to require a response as to all undismissed counts in which they are named as Defendants. Service is directed by separate Order.

#### B. Count One

Count One names Defendant MacDonald on the grounds that he rejected Sereduck's appeal of the denial of his grievance against Varnum for failing to request a transfer. MacDonald's rejection of that grievance appeal is too attenuated to constitute deliberate indifference to Sereduck's safety. Sereduck's safety could reasonably be assured by means other than transfer, and Crossroads officials had the same obligation to protect Sereduck as officials at Montana State Prison would have. See, e.g., Farmer v. Brennan, 511 U.S. 825, 833 (1994); Robinson v. Prunty, 249 F.3d 862, 866 (9th Cir. 2001). MacDonald should be dismissed from this count.

**C. Count Two**

Count 2 alleges that Sgt. Johnson used profanity in ordering Sereduck into the top bunk, refused to consider his medical bottom-bunk order, and threatened him with segregation if he did not take the top bunk. It also alleges that, "after some discussion," Sereduck was placed in a cell with another inmate, Hamby, and apparently had no further trouble as a result of Sgt. Johnson's insistence that he take the top bunk.

These allegations do not state a claim against Sgt. Johnson. "[V]erbal harassment generally does not violate the Eighth Amendment." Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996). Sgt. Johnson gave Sereduck the option of going to segregation if he would not take the top bunk; from there, he would have been able to demonstrate the truth of his medical orders to other officers. In the end, Sereduck was not forced to use the top bunk, so Sgt. Johnson did not interfere with the medical orders. This claim, as to Sgt. Johnson, should be dismissed with prejudice.

**D. Count 3**

   **1. Kimmet**

Under the rule of Keenan, Kimmet's allegedly defamatory comment does not state a constitutional claim because Sereduck describes it only as an "insult." The Court conludes that if the comment actually endangered Sereduck, he would have said so. To whatever extent Sereduck might wish to make a state-law claim for

defamation against Kimmet, the Court should decline to exercise supplemental jurisdiction on the grounds that such a claim would be a novel application of state law. See 28 U.S.C. § 1367(c)(1). The Montana Supreme Court has not decided a case involving a defamation claim filed by an inmate against a guard for a comment made inside a prison. Kimmet should be dismissed.

### 2. Wirsching

Similarly, Wirsching should be dismissed, insofar as Sereduck alleges that he "conspired" with Kimmet to defame Sereduck or failed to prevent Kimmet from defaming Sereduck. However, as to Sereduck's claim that Wirsching threatened to write him up if he filed a grievance regarding Kimmet's comment – and actually did so – Wirsching must respond. Service is directed separately.

### 3. Christiaens

Christiaens cannot be held liable on account of an inadequate investigation of a grievance because inmates are not constitutionally entitled to a grievance process. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (citing Shango v. Jurich, 681 F.2d 1091, 1100 (7th Cir. 1982), and Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)). The grievance process is strictly an internal procedural mechanism for the handling of prisoner complaints. It does not involve substantive rights, nor does it mandate the outcome of grievances based on specified criteria. See, e.g., Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993);

Azeez, 568 F. Supp. at 10, cited in Mann, 855 F.2d at 640.

### 4. Campros

Sereduck alleges that Campros did not believe him when he reported that ice had been dumped on his head and pillow at 11:30 p.m. Whether Campros believed him or not, his indifference to the episode does not constitute deliberate indifference to Sereduck's safety. No doubt the episode was unpleasant, but it does not indicate that Campros was not ensuring that Sereduck was safe.

### 5. Sgt. Johnson

Count 3 alleges that Sgt. Johnson put S-pod in lockdown after Sereduck reported that an inmate had poured water in his bed and did not stop other inmates from threatening Sereduck. However, Sereduck does not allege that Sgt. Johnson actually failed to protect him from the other inmates. That other inmates threatened Sereduck is not constitutionally significant. "[I]t trivializes the [E]ighth [A]mendment to believe a threat constitutes a constitutional wrong." Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (per curiam). What is significant is that Sgt. Johnson responded to Sereduck's report by increasing the level of security in the pod and that Sereduck came to no harm as a result. Thus, Sgt. Johnson could not have been deliberately indifferent to Sereduck's safety. Count 3 fails to state a claim against Sgt. Johnson and this part of the claim should be dismissed with prejudice.

### 6. Everett

Again, verbal harassment and threats do not violate the Eighth Amendment. Everett's comment that he would make sure Sereduck would wind up in segregation if he filed a grievance against Everett is not retaliation, because Sereduck does not claim that Everett's comments had a chilling effect on him. See Rhodes v. Robinson, 408 F.3d 559, 567-68 & n.11 (9th Cir. 2005). Further, although Everett's language allegedly was harsh and unprofessional, it is clear from Sereduck's allegations that he was instructing Sereduck to do as he said. That is a legitimate penological goal and defeats a claim of retaliation. Id. at 568. Inmates, in fact, must obey correctional officers. Sereduck fails to state a claim against Everett.

## E. Count 4

### 1. Equal Protection

Sereduck fails to state a claim for violation of the Equal Protection Clause against any of the Defendants named in Count 4. The Fourteenth Amendment's Equal Protection Clause protects prisoners against invidious discrimination that is based on an impermissible factor such as race, gender, religion, or the like. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Inmates themselves are not a protected class. Nor are sex offenders. Sereduck has not alleged any facts that would tend to show that he was treated

differently than other inmates because he is a member of a protected class. Consequently, he does not state an equal protection claim.

### 2. Eighth Amendment

Given Sereduck's references to the Defendants' "deliberate indifference," the Court will also consider whether he states a claim under the Eighth Amendment. As to Defendant Varnum, the allegations of Count 4, when read together with Counts 1 and 2, state a claim sufficient to warrant service.

However, the claim against Cassem for doing "nothing" when inmates threw spit wads at Sereduck is similar to the claim regarding Campros's failure to do anything about the ice incident. It simply fails to rise to the level of showing that Cassem was deliberately indifferent to Sereduck's physical safety, because Sereduck does not claim that there was any immediate, realistic threat that he would be attacked. The same is true for Cassem's failure to keep other inmates out of Sereduck's cell while he was at dinner; Sereduck could see that his cell was open when he returned and so was in no danger of a surprise attack, nor did any such attack materialize or even loom. Cassem's promise to make sure the door stayed shut did not obligate him to guard the door for the duration of Sereduck's absence. Cassem's only obligation was to take reasonable steps to prevent physical harm to Sereduck, see Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982), and

there is no indication that he failed in that duty.

Similarly, Campros's failure to conduct a search for Sereduck's stolen property does not amount to deliberate indifference to Sereduck's physical safety. The decision by Campros and Sergeant Johnson not to place Sereduck in segregation also does not mean that they were deliberately indifferent to his safety. Sereduck is not constitutionally entitled to *feel* safe; he is only entitled to officers' reasonable efforts to make him safe *in fact*. The allegations of Count 4 do not support an inference that Sereduck was in physical peril – especially when his pod was locked down.

Sereduck also asserts that he related to Defendants Volrath and Jerry Johnson every incident that he believed showed he was in danger, and yet they failed to take his request for a transfer seriously. As set forth above with respect to the allegations of Count 1 against MacDonald, the rejection of Sereduck's request for a transfer is too attenuated to constitute deliberate indifference to his safety, which could reasonably be assured by means other than transfer. Crossroads officials had the same constitutional obligation to protect Sereduck as officials at Montana State Prison have. Consequently, Sereduck does not state an Eighth Amendment claim against Volrath and J. Johnson.

### F. Count 5

Sereduck alleges due process violations against Defendants

Campros, MacDonald, Stuart, Christiaens, and Forsman. The United States Supreme Court has "rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right." Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). To state a claim for a violation of due process, a plaintiff must show (1) that he had a protected liberty interest, and (2) that he was deprived of that interest without adequate due process. The question in Sereduck's case is whether a liberty interest is at stake. If there is no liberty interest at stake, the Constitution does not require the provision of due process, and the second element becomes irrelevant. See Board of Regents v. Roth, 408 U.S. 564, 569 (1971); Erickson v. United States, 67 F.3d 858, 861 (9th Cir. 1995).

In the context of a prison disciplinary hearing, a liberty interest may arise if state officials or employees take actions that either (1) affect the sentence imposed upon conviction in an unexpected manner, or (2) impose a hardship that is atypical and significant in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003).

The sanctions imposed against Sereduck included, at most, thirty days' confinement in segregation. None of the sanctions and none of the Defendants' actions affected his sentence in an unexpected manner. For an inmate serving a twenty-year sentence

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 12

for sexual assault, as Sereduck is, see CON Network, http://app.mt.gov/conweb, the sanctions were minimal. Montana's Parole Board is not required to deny parole to inmates with disciplinary records, see Mont. Code Ann. § 46-23-201(1) (2003), so the possibility that Sereduck's chance of parole will be affected by the disciplinary sanction is "too attenuated" to enter into the analysis. See Sandin, 515 U.S. at 487. Additionally, the sanctions are neither atypical nor significant, even for an inmate with a non-violent record and a much lighter sentence. It is impossible to conclude that the conditions in segregation imposed an atypical or significant hardship on Sereduck. He had no liberty interest at stake.

Moreover, Sereduck states that he had hearings, though he quibbles with the manner in which these were conducted. Under all the circumstances, Count 5 fails to state a claim on which relief may be granted.

**G. Injunctive Relief**

Pursuant to 18 U.S.C. § 3626(a)(1)(A), "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct *the violation of the Federal right* of a particular plaintiff" (emphasis added). Thus, a plaintiff is required to prove a constitutional violation corresponding to the requested relief in order to warrant issuance of an injunction. In sum, it is clear that the plaintiff must show

a relationship between the alleged constitutional violation and the form of injunctive relief requested.

Especially in view of the Court's recommendation to dismiss Count 5, it would be inappropriate for this Court to expunge Sereduck's disciplinary record or order his reclassification. Sereduck's belief that he needed to threaten or assault others in order to obtain the protection he sought cannot be reconciled with the Defendants' duty to protect him. Even if they failed in that duty, as Sereduck claims, expunging his disciplinary record would do nothing to correct the Eighth Amendment violation. By contrast, Sereduck's claims for damages directly address the Defendants' actions. The first part of Sereduck's request for injunctive relief should be dismissed with prejudice.

Moreover, requiring that Sereduck be placed on the low side of the Montana State Prison and prohibiting him from ever being transferred out of MSP is hardly the least intrusive way to correct any violation that might arise out of the situation he describes. To order such a transfer would intrude far too much on the Montana Department of Corrections by requiring it to place Sereduck's housing needs before those of every other inmate in Montana. The second part of Sereduck's request for injunctive relief should also be dismissed with prejudice.

### H. State Law Claims

To whatever extent Sereduck may intend to make claims against

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 14

the Defendants under state law, the Court should decline to exercise supplemental jurisdiction. Tort claims such as intimidation and defamation against prison officials are uncommon in this Court and, so far as the Court is aware, in the state courts as well. If prisoners wish to extend state law, they should do so in state courts. See 28 U.S.C. § 1367(c)(1), (d).

**IV. Conclusion**

Varnum will be required to respond to the allegations against him in Counts 1, 2, and 4. Forsman will be required to respond to the allegations against him in Counts 1 and 2. Lamey will be required to respond to the pertinent allegations in Counts 1 and 2. Wirsching will be required to respond to the retaliation allegation in Count 3 but should be dismissed in all other respects. Music and Swanson will be required to respond to the allegations against them in Count 1.

Count 5 and Sereduck's request for injunctive relief should be dismissed in their entirety. Defendants MacDonald, Volrath, Jerry Johnson, Christiaens, Campros, Sergeant Johnson, Stuart, Cassem, Everett, and Kimmet should be dismissed from all counts in which they are named.

Based on the foregoing, the Court enters the following:

**ORDER**

Sereduck's motion to amend his Complaint (Court's doc. 11) is

MOOT.

The Court also enters the following:

**RECOMMENDATION**

1. Count 5 and Sereduck's requests for injunctive relief should be DISMISSED WITH PREJUDICE.

2. Defendants MacDonald, Volrath, Jerry Johnson, Christiaens, Sergeant Johnson, Campros, Stuart, Cassem, Everett, and Kimmet should be DISMISSED.

3. Defendant Wirsching should be DISMISSED from Count 3 EXCEPT as to Sereduck's claim of retaliation, Am. Compl. at 9, ¶ V.C(1)-(4).

4. All state-law claims should be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(1).

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the Plaintiff. Plaintiff is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days[2] after the entry date reflected on the Notice of Electronic Filing, or objection is waived.

---

[2] In prisoner cases, this Court extends the time to object to twenty days in order to take into account the Supreme Court's ruling in Houston v. Lack, 487 U.S. 266, 270-71 (1988), and the somewhat greater mailing time that is involved in sending documents into and out of a prison facility.

Sereduck must immediately inform the Court of any change in his address. Failure to do so may result in dismissal of this case without notice to him.

DATED this 18th day of August, 2006.

/s/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge